JOHN M. MCCOY III, Cal. Bar No. 166244
E-mail: mccoyj@sec.gov
CATHERINE W. BRILLIANT, Cal. Bar No. 229992
E-mail: brilliantc@sec.gov

Securities and Exchange Commission
Rosalind R. Tyson, Acting Regional Director
Andrew G. Petillon, Associate Regional Director
5670 Wilshire Boulevard, 11th Floor
Los Angeles, California 90036
Telephone: (323) 965-3998
Facsimile:  (323) 965-3908

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>CHARLES R. NORTON and CHAD R. NORTON,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to Sections 21(d)(1)-21(d)(2), 21(e), 21A(a)(1), and 27 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1)-(d)(2), 78u(e), 78u-1(a)(1) & 78aa. Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange in connection with the acts, practices, and courses of business alleged in this complaint.

2. Venue is proper in this district pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because certain of the acts, practices, and courses of business constituting violations of the federal securities laws occurred within this district, and both defendants reside in this district.

## SUMMARY

3.     This matter involves unlawful insider trading in the securities of Valley Bancorp ("Valley") by defendants Charles R. Norton and Chad R. Norton before the announcement of Valley's acquisition by Community Bancorp ("Community") on June 28, 2006.  On or about May 16, 2006, Charles Norton, who at the time sat on Community's board of directors, learned through his work as a director that the acquisition was imminent.  After the announcement of the acquisition, the price of Valley's common stock rose to $43.50 from the previous day's close of $38.24, a 13.6 % increase.  Charles and Chad Norton realized a profit of $35,064.71 by trading 7,000 Valley shares in advance of the announcement based upon Charles Norton's material, nonpublic information.

4.     By engaging in the conduct described in this complaint, Charles and Chad Norton, directly and indirectly, engaged in acts, practices, and courses of business in violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

5.     The Securities and Exchange Commission ("Commission") brings this action for an order permanently restraining and enjoining Charles and Chad Norton against future violations of the federal securities laws, ordering disgorgement of ill-gotten gains and prejudgment interest thereon, imposing civil penalties against each defendant, and imposing an officer and director bar against Charles Norton.

## THE DEFENDANTS

6.     Charles R. Norton, age 58, resides in Las Vegas, Nevada.  He served on Community's board of directors from 1998 to September 2006.

7.     Chad R. Norton, age 33, resides in Las Vegas, Nevada.  Chad Norton is Charles Norton's son.

## RELATED ENTITIES

8.     Community Bancorp is a Nevada corporation with its principal offices in Las Vegas, Nevada.  Community is the holding company for Community

1  Bancorp Bank of Nevada, which provides banking and other financial services to
2  small and medium-sized businesses. Community's common stock trades on the
3  NASDAQ Global Market System under the symbol "CBON."
4      9.    Valley Bancorp was a Nevada corporation with its principal offices in
5  Las Vegas, Nevada. Valley was the holding company of Nevada Bank, a Nevada
6  state-chartered bank. Valley's common stock traded on the NASDAQ Global
7  Market System under the symbol "VLLY" until Community's acquisition of
8  Valley closed in October 2006.

## FACTS

10      10.    Charles Norton joined Community in 1998 as a member of its board
11  of directors, and was an active board member until he resigned in September 2006.
12  His duties included attending monthly board of director meetings, as well as
13  monthly meetings of various committees. Except for a brief hiatus of
14  approximately one month between April and May 2006, Charles Norton attended
15  Community's monthly board of directors meetings. Charles Norton also received
16  and reviewed all draft minutes of prior board meetings and agendas for upcoming
17  board meetings approximately two days before the next scheduled board meeting.
18      11.    Charles Norton first learned at a Community board of directors
19  meeting held in February 2006 that Community was interested in acquiring Valley.
20      12.    Various Norton family members, including Charles and Chad Norton,
21  have brokerage accounts at Wells Fargo Investments, LLC (the "Norton
22  Accounts"). Before April 1, 2006, Charles Norton made the trading decisions for
23  the Norton Accounts and received brokerage statements for the Norton Accounts at
24  his home.
25      13.    On April 1, 2006, Charles Norton had a heart attack while competing
26  in a triathlon near Lake Mead, Nevada, which required a two-and-a-half week
27  hospitalization. On April 8, 2006, Chad Norton assumed temporary trading
28  authority over all of the Norton Accounts.

14. None of the Norton Accounts had ever traded in Valley stock before May 2006.

15. Charles Norton resumed fully participating as a member of the Community board of directors in early May 2006. Through his position as a Community board member, on or about May 16, 2006, Charles Norton learned that the public announcement of Community's acquisition of Valley was imminent. Charles Norton knew that he should maintain the confidentiality of this material, nonpublic information in his role as a Community board member.

16. Chad Norton visited or telephoned Charles Norton every day in May and June 2006. After Chad Norton assumed temporary trading authority over the Norton Accounts, Chad Norton frequently called the Wells Fargo registered representative for the Norton Accounts from Charles Norton's cell phone or home phone. Some of these telephone calls were placed with a speaker phone with both Charles and Chad Norton on the line.

17. When Chad Norton exercised his temporary trading authority in May and June 2006, he purchased varying amounts of Valley shares throughout the Norton Accounts and allocated them among the accounts in a pattern similar to how his father had apportioned trades across those accounts. Charles Norton's pattern was to spread trades over several family accounts.

18. Charles Norton obtained material, nonpublic information about Community's imminent acquisition of Valley and breached his duty to Community and its shareholders by passing that information to his son, Chad Norton, for an improper purpose.

19. Chad Norton knew, or was reckless in not knowing, that Charles Norton breached his duty to Community by disclosing to Chad Norton sensitive and confidential information about the Valley acquisition that Charles Norton had learned as a Community board member.

20. On May 16, 2006, Chad Norton placed a telephone order to Wells Fargo to buy 1,000 Valley shares in his individual trust account at a limit of $38 per share. On May 22, Chad Norton placed another telephone order to purchase a total of 4,000 Valley shares to be held in seven of the Norton Accounts. On May 24, Chad Norton placed an order to purchase a total of 2,000 additional Valley shares to be held in four of the Norton Accounts. Altogether, Chad Norton bought 7,000 shares of common stock in Valley between May 16 and May 24, 2006.

21. Chad Norton bought the 7,000 shares of Valley stock based on material, nonpublic information from Charles Norton. By purchasing Valley stock for their personal benefit while aware that positive information about Valley was forthcoming, Charles and Chad Norton violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

22. On June 28, 2006, Community issued a press release announcing the signing of a definitive agreement with Valley to acquire all of Valley's common stock and stock equivalents for approximately $137 million in stock and cash. The next day, Valley shares rose to $43.50 from the previous day's close of $38.24, a 13.6% increase, and the stock's trading volume rose to 135,741 shares, a 2,885% increase from the previous day's volume of 4,547 shares.

23. On July 7, 2006, approximately one week after the announcement of the acquisition, Chad Norton sold 6,000 of the 7,000 Valley shares he had purchased in the Norton Accounts for $44.50 per share. On July 28, 2006, Chad Norton sold the remaining 1,000 Valley shares for $44.77 to $44.78 per share. The combined profit from all of these sales was $35,064.71.

///
///
///
///
///

## CLAIM FOR RELIEF
## FRAUD IN CONNECTION WITH THE
## PURCHASE OR SALE OF SECURITIES
### Violations of Section 10(b) of the Exchange Act
### and Rule 10b-5 Thereunder

24. The Commission realleges and incorporates by reference paragraphs 1 through 24 above.

25. Defendants Charles and Chad Norton, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, with scienter:

    a. employed devices, schemes, or artifices to defraud;

    b. made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    c. engaged in acts, practices or courses of business which operated or would operate as a fraud or deceit upon other persons.

26. By engaging in the conduct described above, defendants Charles and Chad Norton violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court:

### I.

Issue a final judgment, in a form consistent with Fed. R. Civ. P. 65(d), permanently enjoining defendants Charles and Chad Norton and their officers,

agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the final judgment by personal service or otherwise, and each of them, from violating Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

## II.

Order Charles and Chad Norton to disgorge all ill-gotten gains from their illegal conduct, together with prejudgment interest thereon.

## III.

Order Charles and Chad Norton to pay a civil penalty under Section 21A(a) of the Exchange Act, 15 U.S.C. § 78u-1(a).

## IV.

Order an officer and director bar against Charles Norton pursuant to Section 21(d)(2) of the Exchange Act, 15 U.S.C. § 78u(d)(2).

## V.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## VI.

Grant such other and further relief as this Court may determine to be just and necessary.

DATED: April 29, 2008

_Catherine W. Brilliant_
Catherine W. Brilliant
Attorney for Plaintiff
Securities and Exchange Commission